# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| GALAESO CARDONA HINOJOSA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> LINEBARGER GOGGAN BLAIR & SAMPSON, LLP, et al., <br><br> Defendants. | Case No. 1:19-cv-02521 <br><br> Judge Charles R. Norgle |

## ORDER

Defendants' motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction [22] is denied.

## STATEMENT

Galaeso Hinojosa and Maria Cardona ("Plaintiffs") bring this putative class action against the firm Linebarger Goggan Blair & Sampson, LLP and the City of Chicago ("Defendants"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. Before the Court is Defendants' motion to dismiss. For the reasons stated below, the motion is denied.

This case involves an alleged deceptive debt collection. Plaintiffs claim that a debt collection law firm, on behalf of the City of Chicago, attempted to collect a water bill payment eighteen years after the debt was due. Specifically, they allege that it was deceptive for the firm to send them a collection letter without informing them that the city's claim was time-barred by statute of limitations or that Plaintiffs would sacrifice this defense if they made partial payment.

In their Motion to Dismiss, Defendants argue that Plaintiffs' first claim, for violation of the Federal Debt Collection Practices Act, should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) because FDCPA regulation cannot apply to Plaintiffs' water bill as it is not consumer debt that "aris[es] out of" a consensual "transaction." 15 U.S.C. 1692a(5) (defining "debt" in the FDCPA). They also argue that Count I fails because the four-year statute of limitations from Illinois' Uniform Commercial Code invoked by Plaintiffs[1] does not apply to the water bill, due to the City of Chicago's authority stemming from Home Rule and the doctrine of *nellum tempus*.[2] Second, they argue that Plaintiffs' other count, for declaratory and injunctive

---

[1] 810 ILCS 5/2-275, "Statute of Limitations in Contracts for Sale"

[2] This is a shortened version of the Latin phrase meaning "time does not run against the King," or rather, government forever maintains its ability to bring claims on behalf of the people.

1

relief, fails pursuant to Rule 12(b)(1) because those claims for relief: (1) do not independently confer federal jurisdiction; (2) are not remedies allowed under the FDCPA; and (3) are mere remedies rather than causes of action. Finally, Defendants contend that the second Plaintiff, Galaeso Hinojosa's wife Maria Cardona, is not a proper plaintiff because she was not named on the water bill.

For the following reasons, the Court denies the motion at this early stage of litigation. Plaintiffs have met the notice-pleading requirements of a complaint. Simply put, Plaintiffs plead facts that make their claims plausible. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The Court is not ruling, however, that Defendants' arguments fail as a matter of law. They may in fact prove successful at the summary judgment stage.

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the plaintiff is entitled to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554-557 (2007). This statement must provide sufficient plausible facts to put a defendant on notice of the claims against him. Brooks v. Ross, 578 F. 3d 574, 581 (7th Cir. 2009). The complaint "must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above a speculative level.'" Doe v. Village of Arlington Heights, 782 F.3d 911, 914 (7th Cir. 2015) (quoting Twombly, 550 U.S. at 555, 570). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citations and quotation marks omitted). In reviewing a plaintiff's claim, the court "must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." Virnich v. Vorwald, 664 F.3d 206, 212 (7th Cir. 2011).

## Consumer Debt under the FDCPA

Having reviewed the pleadings and briefs submitted by the parties, and taking Plaintiffs' factual allegations as true, the Court concludes that Plaintiffs' claims do not fail as a matter of law at this point. Plaintiffs meet the above pleading standards and put Defendants on notice of the claims against them. In short, they allege that they had a contract with the city for the sale of water. They further assert that Defendant LGB&S, on behalf of the City, and after the water bill was eighteen years old (which is well beyond the statute of limitations invoked by Plaintiffs), attempted to collect the debt via a letter. In doing so, Defendants failed—allegedly deceptively—to inform Plaintiffs that Plaintiffs could no longer be sued to recover the debt or that Plaintiffs might forfeit this defense should they choose to begin paying the debt. See Pantoja v. Portfolio Recovery Associates, LLC, 852 F.3d 679, 684 (7th Cir. 2017) (finding that a letter attempting to recover a credit debt was deceptive for the same two foregoing reasons). The complaint makes out a plausible claim.

Defendants argue that the nature of Chicago's provision of water precludes Plaintiffs' FDCPA claim because water service does not constitute a consensual transaction. Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1326 (7th Cir. 1997) ("the FDCPA limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services."). They point out that there is no alternative water provider and that water prices, whether a property is metered or not, are dictated by statute.

However, the parties disagree about (1) whether there was a contract;[3] (2) whether Chicago municipal code requires water permit applications and whether provision of water is automatic;[4] and (3) the nature of water services, including penalties for non-payment, in other municipalities from cited cases—specifically, New York City. See Boyd v. J.E. Robert Co., 765 F.3d 123, 126 (2d Cir. 2014). Again, Defendants may be correct on these issues, but the Court is required to accept the facts alleged by Plaintiffs and draw reasonable inferences in their favor at this stage. Virnich, 664 F.3d at 212.

Without the benefit of discovery, which may or may not reveal additional relevant facts, the Court proceeds with an abundance of caution and does not yet decide whether the water bill here constitutes consumer debt under the FDCPA. There appears to be no binding law on this Court, and federal courts around the country have not uniformly resolved this question. At this point, the Court will not rule as a matter of law. See Boyd v. J.E. Robert Co., 765 F.3d 123, 126 (2d Cir. 2014) (finding that a New York City water bill was not a FDCPA debt, as plaintiff was compelled to use the city's service, making their relationship "akin to" a taxpayer and taxing authority), but see People ex rel. County of DuPage v. Smith, 21 Ill.2d 572, 173 N.E.2d 485 (1961) ("regardless of whether or not connection is compelled, the [charge for use of sewer system] arises from an implied contract . . ."), and Austin View Civic Ass'n v. City of Palos Heights, 85 Ill.App.3d 89, 94, 405 N.E.2d 1256 (1980) ("When a municipal corporation owns and operates a water system for the purpose of selling water to consumers, it is acting in a business capacity and is generally to be treated as if it were a private utility company.");[5] see also Franklin v. Parking Revenue Recovery Svcs, Inc., 832 F.3d 741, 744 (7th Cir. 2016) (ruling that FDCPA applied to parking bill because contract law created the payment obligation when individuals chose to park in a government parking lot, and explaining that the "arising out of" language in the FDCPA limits the law's reach to "only those obligations that are created by the *contracts* the parties use" and that "tort law or traffic regulations" are "not covered by the FDCPA."); Flowers v. Baltax 2017, LLC, No. CV JKB-19-0618, 2019 WL 3501584, at *4 (D. Md. Aug. 1, 2019) (holding that "Plaintiff's debt arising from unpaid water bills could plausibly qualify as a consumer debt under the FDCPA" and distinguishing the case from *Boyd* because "water charges in New York City are incidental to property ownership" whereas "Baltimore City charges individuals for water based on the amount of water consumed" by meter) but see Boyd v. J.E. Robert Co., No. 05-CV-2455 KAM RER, 2013 WL 5436969, at *8 (E.D.N.Y. Sept. 27, 2013)[6] (stating that the water charges in *Boyd* "were metered according to usage" but declining to rule that "metered usage alone gives rise to a consensual transaction under the FDCPA . . . where, as here, property owners have no choice in determining whether or not to use municipal water services.").

---

[3] Dkt. 1, ¶¶ 16; contra Dkt. 22, p. 7.
[4] Dkt. 34, Plaintiffs' Sur-Reply.
[5] Defendants argue that Illinois cases, especially very old ones, are irrelevant to any interpretation of a federal statute, including whether there was a consensual transaction under the FDCPA. While such cases are not dispositive on the federal issue, the Court notes that they can be persuasive in characterizing the contractual nature of a debt and whether that debt "aris[es] out of a transaction" like a municipal water bill. 15 U.S.C. 1692a(5); Franklin v. Parking Revenue Recovery Servs., Inc., 832 F.3d 741, 744 (7th Cir. 2016) ("if . . . obligations arise out of contract law, they are debts covered by the FDCPA."). Defendants cite no case involving a "non-consensual contract," and even implied contracts can be viewed as involving implied consent. Contract law is textbook state law, and so Illinois cases can be properly considered.
[6] Aff'd sub nom. Boyd v. J.E. Robert Co., 765 F.3d 123 (2d Cir. 2014) (stating that nothing suggested that plaintiffs had to request water . . . "Rather, the charges are levied automatically in connection with the property ownership.").

3

## Statute of Limitations

The Illinois Constitution gives "home rule units" like Chicago power "pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. const. 1970 art. VII, § 6(a). Because the UCC statute of limitations at issue does not mention home rule or explicitly preempt local laws, Defendants argue that the state statute of limitations does not apply to the city's attempts at debt collection. However, Defendants only cite language regarding the general principle that home rule units are afforded broad power unless the legislature specifically steps in. Palm v. 2800 Lake Shore Drive Condo Ass'n, 988 N.E.2d 75, 81, 370 Ill.Dec. 299 (2013) (the Illinois constitution gives home rule units the "broadest powers possible" . . . "except when those powers are limited by the General Assembly" . . . by passing "a law specifically stating home rule authority is limited.") Defendants do not point to any case or law that requires that a state statute of limitations like the one contained in the UCC does not apply to a home unit, nor do they point to any local ordinance that might concurrently apply to cases brought by the City of Chicago. The Court will not dismiss Plaintiffs' claim at this early stage simply because there is no explicit preemption language in the statute and the Chicago Municipal Code remains silent on the issue. Discovery will proceed on the issue, and it may be raised again at summary judgment.

Defendants also argue that the doctrine of *nellum tempus* precludes the application of the statute of limitations because the City of Chicago's attempted collection from Plaintiffs is a public right. "Under the common law, the statute of limitations may not be asserted against the State or its county or municipal subdivisions as plaintiffs in actions involving public rights." City of Chicago v. Latronica Asphalt & Grading, Inc., 346 Ill. App. 3d 264, 269, 805 N.E.2d 281, 286 (2004).[7] "[W]hen a governmental unit acts in a public capacity . . . a statute of limitations may not be asserted against the government unless the statute expressly applies to claims brought by the government." In re Estate of Deuth, 2013 IL App (3d) 120194, ¶ 10, 992 N.E.2d 180, 182 (ruling that the State sought to assert a public right by collecting Medicaid penalties which were "public funds paid to a citizen in the form of public healthcare benefits" and failure to recover them would reduce public revenue). "Three factors must be addressed when determining whether a governmental entity is asserting a public or private right: (1) the effect of the interest on the public; (2) the obligation of the governmental entity to act on behalf of the public; and (3) the extent to which public funds must be expended." Latronica, 346 Ill. App. 3d at 269. When an entity is acting in a private capacity, its claim may be subject to a limitations defense. Id.

Defendants insist that the present collection is a public right because water bill collections pay for essential water provisions in the city, fund payments on municipal bonds, and contribute to employees' annuity and benefit fund. However, a "municipality, such as the city, which sells water, does so in a proprietary rather than in a governmental capacity". Village of Niles v. City of Chicago, 82 Ill.App.3d, at 68, 401 N.E.2d at 1240); Village of Orland Hills v. Citizens Utility Co., 347 Ill.App.3d 504, 515, 807 N.E.2d 590, 598 (1st Dist. 2004). The Court therefore finds that the attempted collection of the water bill in this case is an example of the government acting in its private capacity. The case is not dismissed.

Defendants' motion to dismiss Count II pursuant to Rule 12(b)(1) is also denied. Count I, which confers subject matter jurisdiction on this Court, survives this motion. "District courts shall

---

[7] "This doctrine of governmental immunity from statutes of limitation is supported by the policy judgment that the public should not suffer as a result of the negligence of its officers and agents in failing to promptly assert causes of action which belong to the public." Latronica Asphalt & Grading, Inc., 346 Ill. App. 3d 264, 269, 805 N.E.2d 281, 286 (2004).

have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. §1367(a). Both claims involve the same circumstances and so both survive this Motion.

Plaintiff Cardona will also survive this Motion. As an alleged former co-owner of the relevant property, she may be responsible for the debt involved in this case. While she is not named on the collection letter, she may still qualify as a member of the class and at this point will not be dismissed from the case without further discovery.

Defendants' arguments may prove successful at the summary judgment stage or beyond. However, their motion fails at this early stage. Parties should proceed with discovery, including Rule 26(a) disclosures, pursuant to Federal and Local Rules.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: December 11, 2019